COCHECHO NATIONAL BANK *v.* HASKELL & A.

Ordinarily the cashier of a bank has no authority to discharge its debtors without payment, or to bind the bank by an agreement that a surety should not be called upon to pay a note he had signed, or that he would have no further trouble from it.

If, upon inquiry by the surety, the cashier, knowing that he is a surety, inform him that the note is paid, intending that he should rely upon his statement, and the surety does so, and in consequence changes his position by giving up securities, or endorsing other notes for the same principal, or the like, the bank will be estopped to deny that such note is paid.

The suggestion of the defendants' counsel, at the first trial of this cause, that a decision of the questions of law then raised would end the case, was held, on a second trial of the cause, not to have the character of an agreement which the court could specifically enforce.

ASSUMPSIT, by the Cochecho National Bank against Ezra Haskell, Paul A. Stackpole, and John Q. A. Smith, in which the plaintiff seeks to recover the balance of a promissory note for $800, dated July 3, 1866. Stackpole and Smith are described as sureties, though the note contains a provision that the sureties shall be liable, and the bank may extend the time of payment without discharging them. Haskell and Smith were defaulted, and Stackpole filed the following brief statement of defence under the general issue :

"The plaintiff will take notice, that on the trial of the above issue the said Stackpole will prove that the note set forth in the plaintiff's specification was signed by said Stackpole as a surety for said Haskell; that subsequently, other notes payable to said bank were signed by said Stackpole as surety for said Haskell, to wit, a note dated Sept. 17, 1866, for the payment of $2,000, and a note dated Nov. 12, 1866, for the payment of $1,000; that, at the time said note for $2,000 was signed by said Stackpole, said bank held property of said Haskell, as satisfactory and ample security for the payment of said note in the plaintiff's specification named, and in full discharge of said Stackpole's liability on said note, which property said bank neglected to apply in

payment of said note and in discharge of said Stackpole's liability thereon; that at the February term, 1869, of this court, said bank recovered judgment against said Haskell, Stackpole, and others for the sum of $2,577.03 debt, and $17.99 costs, which said judgment was founded on said notes for $2,000 and $1,000 above named; that on the 30th day of April, 1869, in consideration of the sum of $800 paid by said Stackpole to said bank, the said bank, by its cashier duly authorized, agreed with said Stackpole that said bank would not hereafter enforce or collect the remainder of said judgment, or any part thereof, against said Stackpole or his estate; that at the time said judgment was pending against said Stackpole, and at the time of said agreement and of said payment, said Stackpole and said Haskell and others were informed and assured by said cashier that the notes on which said judgment was founded were the only notes payable to said bank on which said Stackpole was liable as a surety of said Haskell; and that it was then understood and agreed by said cashier, and by said Stackpole and Haskell, that said sum of $800, so paid by said Stackpole, was in full discharge of any and all claims of said bank against said Stackpole as a surety of said Haskell."

The plaintiff moved to reject the brief statement, which motion was overruled, *pro forma;* and the plaintiff excepted.

Stackpole testified that in September, 1866, he signed a note for $2,000 to the bank, as surety for Haskell, with three other sureties, and in November, 1866, signed another for $1,000 in the same manner and, subject to the plaintiff's exception, the witness was permitted to testify that, just before signing the $2,000 note, he asked the cashier, Ezekiel Hurd, if the $800 note *which defendant claims, and, for the purposes of this case, may be considered as the only note in the bank at that time signed by Stackpole as surety for said Haskell,* had been paid, and received for answer that it had been paid or secured, so that he would have no further trouble from it. At the February term of court, 1869, a judgment was recovered in favor of the bank against the signers of the $2,000 and $1,000 notes for the amount then due on those notes; and Stackpole testified that he settled with said Hurd, the cashier, his liability on said judgment, and paid the bank $800 and took a discharge in writing.

The defendant then offered to prove by parol, that at the time the above paper was executed this defendant was informed by the cashier of the bank that the notes on which the judgment was founded were the only notes payable to the bank on which said Stackpole was liable as surety for Haskell; also, that at the time the $800 was paid it was understood and agreed between said cashier and said Stackpole that said payment was in full discharge of any and all claims which the bank had against said Stackpole as surety for said Haskell and in discharge of the note in suit. The plaintiff objected that it did not appear but what said agreement was in writing; whereupon, in answer to the court, said Stackpole testified that said agreement was in writing, in existence, and is his possession. The court ruled that the

writing was the only competent evidence of that agreement; to which the defendant excepted.

The defendant then offered said writing :

" Whereas, the Cochecho National Bank, at the supreme judicial court for Strafford county, at the February term, 1869, recovered judgment against Ezra Haskell, Paul A. Stackpole, and others, for the sum of twenty-five hundred seventy-seven dollars and three cents debt, and seventeen dollars ninety-nine cents cost of suit, which judgment was founded on certain notes of hand signed by said Haskell as principal, and by said Stackpole and others as his sureties; and whereas said Stackpole has paid to said bank the sum of eight hundred dollars as his reasonable proportion of said judgment ; now said bank, in consideration of such payment to said bank, hereby agrees, promises, and covenants, to and with said Stackpole, that said bank will not hereafter enforce said judgment or the execution issued thereon against said Stackpole, or his estate, or his administrators or heirs or their estates, or in any way by action, process, assignment, or otherwise against said Stackpole or his representatives, attempt to collect the remainder of said judgment, or the demands upon which the same is founded, or any part thereof. In witness whereof, said bank, by Ezekiel Hurd, its cashier, for that purpose duly authorized, has caused its seal to be hereto affixed, and this agreement to be by it signed and executed, in its name and behalf, this 30th day of April, A. D. 1869.

" Hereby releasing the real estate of said Stackpole from any attachment made thereof to secure said judgment, or any part thereof.

    [L.S.]                                   " EZEKIEL HURD, *Cashier.*"
[FIVE CENT STAMP.]

The plaintiff objected that it could not be received in evidence under the defendant's brief statement. The objection was overruled, *pro forma;* and the plaintiff excepted.

The defendant then offered to show by parol, that at the time said writing or discharge was made, it was understood and agreed between said cashier and said Stackpole that all of said Stackpole's liability to said bank as surety for Haskell, including the note in suit, was included in and discharged by said writing or release. The court ruled the evidence incompetent ; and the defendant excepted.

The only evidence of the authority of the cashier to compromise or settle the claims of the bank with said Stackpole was the following vote of the directors, introduced by the plaintiff : " 1869, April 28. At a meeting of the directors this day, at seven o'clock P. M., all present except J. E. Bickford, *Voted*, If Paul A. Stackpole would pay $800 on a judgment against E. Haskell, said Stackpole, and others, that this bank would not call on said Stackpole for any more on said judgment.                                   EZEKIEL HURD, *Cash.*"

When the discharge was produced, it appeared that it was under the seal of the bank. The court rejected the above evidence offered by the defendant; and he excepted.

It being suggested by the defendant's counsel that the decision of the questions above raised would be the end of the case, the cause was taken from the jury, and the questions reserved.

*Sawyer, Hobbs,* and *Wheeler,* for the plaintiff.

*White* and *T. J. Smith,* for the defendant.

BELLOWS, C. J. Stackpole testified that just before signing the $2,000 note, he asked Mr. Hurd, the cashier of the bank, if the $800 note—which was the only note in the bank signed by Stackpole as Haskell's surety—had been paid ; and he received for answer that it had been paid or secured, so that he would have no further trouble about it.

The question is, whether this would constitute a good defence if these facts were found, and if so, whether they are admissible under the brief statement, or independent of it.

If this statement by the cashier is to be regarded as made by the bank, the question is, whether the bank would be estopped to affirm the contrary.

If Stackpole had made this inquiry of the bank with a view to determine whether he should endorse another note for Haskell, and the bank, with a knowledge of the purpose of the inquiry, had told him the $800 note was paid or secured, and he would not be further troubled with it, and this was said intending that he should rely upon it, and Stackpole was induced thereby to sign another note for $2,000, the bank would be estopped. It would come, indeed, within the well settled definition of an estoppel *en pais. Drew* v. *Kimball,* 43 N. H. 282, and cases cited.

So, if the representation was intended to induce the defendant to believe that it was true, and to act upon it accordingly, and he did thereupon change his position relying upon the truth of such representation, the bank would be estopped. It would be the same if the representation was such as to induce a reasonable man to take it to be true, and believe it was meant he should act upon it, and he did act upon it accordingly. *Drew* v. *Kimball,* before cited, and cases ; *Davis* v. *Handy,* 37 N. H. 75 ; *Odlin* v. *Gove,* 41 N. H. 465.

In *Ayer* v. *Tilton,* 42 N. H. 407, the plaintiff and the defendant and others were co-sureties for Otis Ayer, the plaintiff's brother ; and the defendant held a note of $500 against the plaintiff, which was pledged by another surety to the defendant to indemnify him against this liability. The plaintiff paid this note of Otis Ayer and others, and, believing that Otis Ayer would pay him the money so paid out, he sent the note so paid, having notice of the pledge, to the defendant, to allow him to cut his name from it, which he did, and thereupon gave up the note so pledged to the pledgor. The plaintiff afterwards sued the defendant for contribution ; but the court held that the plaintiff was estopped to deny that the defendant was discharged.

Authorizing the defendant to cancel the note by removing his name from it was equivalent to a declaration that he was discharged or exonerated, and caused the defendant, as matter of course, as the plaintiff must have expected, to give up his security.

The cases cited by the court fully sustain this decision. In *Baker* v. *Briggs*, 8 Pick. 131, the court held that if the plaintiff told the defendant, a surety, that the note was paid, intending to be so understood, and that the defendant was clear of it, and in consequence the defendant lost an opportunity to secure himself against the principal, the defendant would be discharged, though in point of law the note was not paid.

So, in *Harris* v. *Brooks*, 21 Pick. 195, where a surety offered to pay the note to the holder, there, if he was to pay it at all, because he could then get security of the principal, and the holder verbally discharged him and agreed to look to the principal alone, knowing that the defendant was a surety, it was held that the surety was thereby discharged. This was put upon the ground that, by such declaration of the holder that he would exonerate the surety and look only to the principal, the surety would be lulled into security and prevented from obtaining indemnity, and that it would be a fraud on the part of the holder afterwards, contrary to such assurance, to call upon the surety.

The case of *Mahurin* v. *Pearson*, 8 N. H. 539, is not in conflict with these views. There, the surety requested the creditor to collect the debt of the principal, and was told by the creditor that part of the note had been paid, and arrangements made with the principal for the remainder, and that he would not call on the surety for the note. The court held that this was not a discharge, without showing a consideration paid or a loss sustained.

As there was no change in the surety's position in consequence of the plaintiff's statement, the decision accords with the views we have expressed.

In *Barney* v. *Clark*, 46 N. H. 314, the creditor's attorney told one of the principals that the debt had been secured by attachment of property of the principals, and this was communicated by this principal to the surety. This principal then had some property, and would have secured the surety had he supposed he would be holden on the note.

The court held that the plaintiff might discontinue his suit, although property of the principals had been attached without prejudice to his rights against the sureties, and that he was not estopped by having informed the principal that the debt was secured, as there was no agreement or holding out that he would rely solely on his attachment, or that he would prosecute that suit upon the note.

If the law be so that, after having secured a debt by attachment of the property of the principal and given information of it to the surety, the creditor may discontinue the suit and release the property, then the surety must be presumed to know the law, and, without some assurance that the suit should be prosecuted, or that he was to be exon-

erated, it would be his own folly to be lulled into security by informa-
tion of a fact upon which no reliance could be placed for indemnity.

In the case before us, it does not appear that Stackpole was induced
to change his position by this information from the cashier, although he
soon after signed another note for Haskell.   To make out the estoppel,
it must appear that he was induced to sign it by this information of the
cashier.   The question then is, Had the cashier authority to bind the
bank by these representations ?

The acts of a cashier, done in the ordinary course of the business
actually confided to such an officer, may be regarded, *prima facie*, as
coming within the scope of his duty.   He is held out to the public as
having authority to act according to the general usage, practice, and
course of business of such institutions; he is the financial officer of
the bank.   *City Bank* v. *Perkins*, 29 N. Y. (2 Tiffany) 554.   He is
usually entrusted with all the funds of the bank, in cash, notes, bills,
and other choses in action, to be used, from time to time, for the ordi-
nary and extraordinary exigencies of the bank; he receives directly
and through subordinate officers all moneys and notes ; he delivers up all
discounted notes and other securities, when payments have been made ;
he draws checks from time to time for moneys, whenever the bank has
deposits.   In short, he is considered the executive officer, through
whom and by whom the whole moneyed operations of the bank, in pay-
ing or receiving debts, or discharging and transferring securities, are
to be conducted.

This is the doctrine of *Fleckner* v. *The Bank of the United States*, 8
Wheat. 360 ; and it is fully recognized in *Corser* v. *Paul*, 41 N. H. 27,—
and is so laid down in Story on Agency, sec. 114, and Angel & Ames
on Corp. 295–297.

So he may issue certificates of deposit, transfer by endorsement the
negotiable paper belonging to the bank or left with it for collection,
and receive payment of dues to the bank and give receipts therefor.
Angel & Ames on Corp. 296, 297, and cases cited ; Story on Agency,
sec. 115 ; *City Bank* v. *Perkins*, 29 N. Y. 554 ; *Bank* v. *Wheeler*, 21
Ind. 90 ; *Wild* v. *Bank of Passamaquoddy*, 3 Mason 505 ; *Robb* v. *Ross
Co. Bank*, 41 Barb. 586 ; *Sturges* v. *Bank of Circleville*, 11 Ohio N. S.
153,—holding that a cashier, on selling a bill of exchange, may bind
the bank by his affirmations.

It is laid down, however, in Story on Agency, sec. 115, that the
cashier of a bank has no incidental authority to make any declarations
binding upon the bank in matters not within the scope of his ordinary
duties,—as, for example, by assuring a person, about to indorse a note of-
fered for discount, that he will incur no risk and no responsibility by
becoming an indorser.   And such is the doctrine of *United States* v.
*Dunn*, 6 Peters 51 ; *Bank of Metropolis* v. *Jones*, 8 Peters 12.

In both of these cases there appears to have been pledged property of
the principal ; and in the first case, the court say that all discounts are
made under the authority of the directors, and it is for them to fix the
conditions which may be proper in loaning the money.

In *Savings Bank* v. *Downing*, 16 N. H. 188, it was held that the treasurer could not bind the bank by a promise to notify the sureties of any failure to pay on securities furnished by the principal.

So in *Bank* v. *Rogers*, 18 N. H. 255, 261, it was held that declarations of two directors and the cashier that the note in suit was given for a certain other note supposed to be invalid were not admissible, not being made in discharge of any duty imposed on them, but a mere narrative of a past occurrence.

So a promise by a cashier to pay a forged note purporting to be issued by the bank is not within the scope of his authority, and does not bind the bank—*Salem Bank* v. *Gloucester Bank*, 17 Mass. 29; though if he had actually paid it the money could not be recovered back, because the cashier has an implied authority to decide on the genuineness of the signatures. Angel & Ames on Corp. 296, 297, and cases cited.

The treasurer of a savings bank cannot release a debt of the bank without special authority. *Dedham Institution of Savings* v. *Slack*, 6 Cush. 408.

In *Olney* v. *Chadsey*, 7 R. I. 224, it was held that the president of a bank has no power, *virtute officio*, to give up to a debtor securities held by the bank against him.

In view of these principles and authorities, we think the cashier of a bank has ordinarily no power to discharge a debtor of the bank without payment, or to bind the bank by an agreement that a surety should not be called upon to pay a note he had signed, or that he would have no further trouble from it. At least we cannot say that as matter of law he has such authority.

He may, however, have been specially empowered to do the act, or he may have been allowed, by the directors, to take the general charge and management of the business of the bank so as to bring such agreement or statement within the scope of his agency.

This, however, is matter of proof, but as it now stands we cannot hold that the cashier had power to discharge the surety without payment.

It would be otherwise, we think, as to his declaration that the note was paid. It is his duty to receive payment and to keep the account of it, and he is the proper person to apply to, to ascertain whether a note has been paid or not. It would, indeed, be peculiarly within the scope of the business confided to him to give such information.

If, then, on being inquired of by a surety, he had informed him that the note was paid, intending that he should rely upon the statement, and the surety was thereby induced to change his position, the bank would be estopped to deny that the note was paid—*Claflin* v. *Farmers Bank*, 36 Barb. 540—holding that a check certified by the president of the bank was good in the hands of the holder without notice, though drawer had no funds.

For giving information of this kind he must be regarded as the organ of the bank; and if a person standing in the position of surety, and interested to know, is misled by the information he gets, and made

to change his position, it is reasonable that the bank which has confided to the cashier this duty should suffer, rather than an innocent third person, who has done as all reasonable men would in relying upon what was told him. The statement that there were no other notes payable to the bank on which Stackpole was surety for Haskell might be understood as equivalent to saying they were paid.

As to the assurance that the debt was secured and the defendant would not be further troubled, that is in the nature of an agreement to discharge the surety, and, as we have seen, cannot be said, as matter of law, to come within the ordinary scope of a cashier's authority.

The release or covenant in favor of Stackpole could not be enlarged by parol to include the $800 note, and the evidence on that point was rightly rejected.

As to the pleadings, the defence of payment, or its equivalent, may come in under the general issue without a brief statement—1 Ch. Pl. 477, 478—and, if necessary, the brief statement can be amended.

*Case discharged.*

The cause was again tried at the September term, 1871, under the following circumstances: Stackpole alone defended the suit. In this action a case was reserved, February term, 1871, and decided June term, 1871. The case then reserved may be referred to as part of this case. The court ruled that under the former reserved case, and the decision of June term, 1871, the plaintiff was not entitled to judgment; and the plaintiff excepted. The court ruled that, notwithstanding the former reserved case and the decision thereof, the defendant was entitled to prove that the note in suit was paid, and to prove that if it was not paid the plaintiff was estopped to claim that it was not paid; and the plaintiff excepted.

Subject to the defendant's exception, the plaintiff introduced in evidence said former reserved case. Subject to the plaintiff's exception, Stackpole was allowed to testify that just before signing the $2,000 note he asked the cashier, Hurd, about the $800 note, and he said it was paid. Subject to the plaintiff's objection, Haskell was allowed to testify that since the commencement of this suit, and before the last term of court, when Hurd had died and Haley was cashier, Haskell went to the bank and asked what this suit was for,—if there were any other notes except the two which Stackpole had settled; and that Haley said, ' No, there were not.' On cross-examination, Haskell testified that Haley said he did n't know what the suit was about; that he could n't find notes; that there were no claims in the bank not settled ; that Haskell asked what was due on the $800 note, and was told about $500; that Haskell supposed he was sued on that note, and that Stackpole had nothing to do with it. The defences were that the note was paid, and that the plaintiff was estopped to deny that it was paid. The court instructed the jury that in either case the verdict should be for the defendant; and the plaintiff excepted.

The jury returned a verdict for the defendant, and the plaintiff moved

to set it aside on the foregoing exceptions, and also for the following reasons : 1. Because the verdict was against the evidence. 2. Because the evidence was that Stackpole was amply secured upon the note in suit, and had the benefit of that security to the amount of that note. 3. Because the evidence was that Stackpole was amply secured on the $2,000 and $1,000 notes, and still holds said security, and has not been injured by signing said last mentioned notes. 4. Because the balance of evidence was that the cashier did not tell Stackpole, prior to signing the $2,000 note, that the $800 note was paid.

1. The court ruled that whatever might be the balance of the evidence, whether in favor of the defendant or the plaintiff, it did not preponderate in favor of the plaintiff or against the defendant to such an extent as to require the verdict to be set aside as against the evidence, under the rules of law applicable to that subject. 2 and 3. Stackpole testified that he had ample security for signing all the notes ; that the security was turned into money, and invested in materials which Haskell used in manufacturing goods ; that the goods were consigned to Stackpole's agent in Boston, to be sold ; that Stackpole's claim upon his agent is now involved in a suit in Boston, and that the only doubt of the sufficiency of his security arises from that suit. 4. The court ruled that, as the verdict could not be set aside as against the evidence, it was immaterial on this motion whether the court considered the balance of evidence to be on one side or the other, on the point whether the cashier told Stackpole that the $800 note was paid.

*Hobbs*, for the plaintiff.

I. The defendant was not entitled to go to the jury. By the case decided June law term, 1871, it appears that *the decision* of " the question above raised " was to be the end of this suit. This was the proposal of the defendant's counsel, and the printed case shows that, relying upon that stipulation, the cause was taken from the jury. Now, then, so far as that agreement can operate, it is conclusive, and binds both parties and court. It was a proposition by the defendant, *accepted* by the plaintiff, and hence an agreement. Further, it was *acted upon* by the plaintiff. The evidence is on the records. The question now is, To what extent can it operate ? By the decision of June term, as appears by a copy of C. J. Bellows's opinion, furnished by the courtesy of the defendant's counsel to the plaintiff, it is held,—" In the case before us, it does not appear that Stackpole was induced to change his position by this information from the cashier, although he soon after signed another note for Haskell " (we ask to have the case amended to show that it appeared at the trial that the note in suit was not due at the time these other notes were signed—that it lacked nineteen days of being due). And the court then said,—" To make out this estoppel, it must appear that he was induced to sign it by this information of the cashier." This portion of the opinion is called out by what appears

in lines 6 to 11 inclusive, of page 2, printed case of June term, 1871, and the court held that the evidence in those lines was competent under the general issue ; and secondly, that, had it not been, the brief statement might have been amended—*but that even then it was not a defence.* This evidence was *ruled* in at the first trial ; and we say that when the court held that it was not a defence, it was a decision of that " question," and must end the case, as was agreed when the case was taken from the jury. This was the only point but what was decided for the plaintiff, and this, though decided for the defendant, was held to be no defence ; and what, in the face of this fact, which should end the case *without* any agreement, did the court do but simply over-ride the express agreement that the decision of those points was to end the cause ? That is, because evidence of the defendant being, under exception, admitted,—properly, too,—was held not to be a defence, therefore the agreement of record, made in open court at the defendant's special request, shall be ignored, and the plaintiff defrauded (we ask to have the case amended to show that, at the last trial, Haskell, the principal on the note, testified that the note in suit had not been paid, and that Mr. · Sawyer, the president of the bank, so swore). We ask, Was there any point raised in the case at the June term that was not decided ? Every point was decided, and the ruling of the judge at the trial term was sustained upon each point ; and it was further held, that the defendant's position constituted no defence ; and we say that the decision of these questions ends the case. " It being suggested by the defendant's counsel that the decision ·of the questions above raised would be the end of that case, this case was taken from the jury and the questions reserved." The case was taken from the jury on the *condition* contained in the defendant's suggestion, that the decision of these points should end the case. On that condition the plaintiff's counsel assented to the withdrawal ; and those questions having been decided (every one of them), we ask by what authority are we to be deprived of our rights under the stipulation? It would, in plain, simple terms, be perpetrating a gross moral and legal fraud upon the plaintiff. It is simply saying, that although the defendant's counsel induced the plaintiff to have the case withdrawn from the jury by agreeing that if certain conditions are performed (the case ends), yet as the defendant did not prevail, although the condition was performed, the defendant should not be held to his agreement ; and the court will permit him, in violation of his agreement, not only to say that the cause shall not be ended by the " decision of the question above raised," but the defendant may go on and put in a new defence ·by omitting and adding such things as he may deem requisite, from a careful perusal of the opinion given at the June term. We do not understand that the courts of this State are ready to aid in any such fraud as a careful consideration of the case at bar will show exists on the part of the defendant ; and we say that the exception at the bottom of page 1, printed case, is to be sustained.

II. If all be true that was claimed by the defendant, that Hurd said

the note was paid, it does not avail, because Stackpole did not change his position *in consequence* of the statement. Stackpole was *not induced* to sign the note by what he claims Hurd told him. And if he held securities, he did not give them up *in consequence* of anything that Hurd said. So that now, as before, no defence is stated, and none was proved at the trial. It does not appear that the defendant changed his position, or that he had been injured in consequence of what *he claims* Hurd said—that the note in suit " was paid." The case states that the defence was that the note was paid (we ask to have the evidence reported upon this point, as we understand the defence was not that the note in fact had been paid, but that Hurd had so stated). We do not propose to argue these points until such amendments are allowed as the memory or minutes of the court may give the plaintiff.

*T. J. Smith*, for Stackpole.

That the court below was right in not ordering judgment for the plaintiff, under the former reserved case and opinion of the court, is manifest from the fact that no verdict had been rendered or ordered for the plaintiff at the trial, and also from the fact that evidence tending to establish the defence, admitted under exception, was held to have been properly admitted, and that other evidence having the same tendency, which was excluded, was improperly excluded.

The main question, the decision of which as the defendant's counsel supposed would end the case, was this : Was the bank bound by the statements of its cashier made to this defendant, in regard to the note in suit, under the circumstances of this case ? and this was a question for the court : if not, then the defendant had no defence ;—but if the bank was bound, then the plaintiff would not recover, and thus the case would be ended. Now at the first trial, as part of the evidence tending to show that the cashier made the statements alleged was rejected, as the defendant's counsel claimed at the time, and as the court afterwards held, improperly, so if a verdict had been rendered at the first trial for the plaintiff, it must have been set aside because of the rejection of competent and material evidence; but, on the contrary, no verdict was rendered for the plaintiff. Some evidence tending to establish the defence was admitted, and other evidence having the same tendency was improperly excluded. Under such a statement of facts, how could the court order judgment for the plaintiff without a verdict in his favor ? As to the law applicable to the facts, as shown at the second trial,— *Drew* v. *Kimball*, 43 N. H. 282; *Davis* v. *Handy*, 37 N. H. 75; *Odlin* v. *Gove*, 41 N. H. 465 ; *Fleckner* v. *Bank of U. S.*, 8 Wheat. 360 ; *Corser* v. *Paul*, 41 N. H. 27 ; Story on Agency, sec. 114 ; Angel & Ames on Corp. 295–297,—all cited by his honor the chief justice in the opinion in the former case and this opinion,—are conclusive that the court below did not err.

The opinion of the court upon this second case was delivered December term, 1871. It was as follows:

BELLOWS, C. J.   The suggestion of the defendant's counsel, in the former case, that the decision of the questions then raised would end the case, has not the character of an agreement that the court could specifically enforce.   The plaintiff, indeed, makes no agreement upon the subject; and after delivering the opinion, the case was discharged without objection, leaving the action open for trial.

The court, therefore, was right in the present case, in ruling that the plaintiff was not entitled to judgment by virtue of the former decision.   Nor was there any error in the instructions that, if the note was paid, or the plaintiff was estopped to deny that it was paid, the verdict should be for the defendant.

In regard to these instructions, no exception was taken that there was *no* evidence tending to prove these grounds of defence, but that the *weight* of evidence was the other way.

It is true that no evidence is reported to the effect that Stackpole had changed his position by reason of the statement of the cashier that the note had been paid, but the case does not profess to contain all the evidence adduced; and it is not objected that there was no evidence on this point, but that it was not sufficient in weight.

There is nothing, however, disclosed that would justify setting aside the verdict as against evidence, neither is that question sent here.

The remaining question is, whether the testimony of Haskell as to the statements of Haley, the cashier of the plaintiff, was admissible. His statement was, that since the suit was brought, Haley, the then cashier of the bank, informed him that there were no notes other than the two which Stackpole had settled, although, on cross-examination, Haskell said that Haley stated that there was about $500 due on the $800 note.

If there was any materiality at all in this statement of Haley, it is in the representation that there were no other notes in the bank but the two which were settled by Stackpole,—from which, standing alone, it might be inferred that the $800 note was paid; but, taken in connection with the rest of the statement, no such inference could be made, but the contrary, that $500 was not paid.

The jury having found that the whole note was paid, or that the plaintiff was estopped to deny it, it must be obvious that the plaintiff was not prejudiced by this statement, inasmuch as it tended clearly, as far as it went, to prove that it was not paid.

We think the verdict should not be disturbed on that account.   In fact, it does not seem to be much relied on, not having been mentioned in the plaintiff's brief, and barely mentioned in the oral argument.

An amendment was made to the case on the subject of the payment of the note, but as it bore only upon the weight of the evidence, and had no tendency to show that there was no evidence of payment, or that Stackpole had not changed his position, but the contrary, it could not affect our views as to the result.   There must, therefore, be

*Judgment on the verdict.*